EPIFANIA PAGÁN HERNÁNDEZ, Petitioner and Appellee, EX PARTE; LEONOR PAGÁN TORRES ET AL., Interveners and Appellants.

No. 10080. Argued January 9, 1950.—Decided January 31, 1951.

*Ramón G. Goyco* for appellants. *Raúl Matos* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On July 14, 1948 Epifania Pagán Hernández instituted in the lower court a proceeding for declaration of heirship alleging, briefly, that her father Felipe Pagán died intestate in the city of Ponce on June 2, 1948; that he left property to be divided; that at his death he was legally married to Juana Hernández, and that his sole and universal heirs were his legitimate children Eladio, Emilia, Juana Raimunda, Gracia, Eleuteria, Epifania, Gumersindo, Fernanda and Luciano, all surnamed Pagán Hernández, and his aforesaid surviving spouse. She requested that the aforenamed legitimate children as well as his surviving spouse in the usufructuary share provided by the Act, be declared the sole and universal heirs of the deceased.

On the 23d of said month, Leonor, Eustacio and José-Juan Pagán Torres, Modesto, Luis and Luisa Pagán Colón alleging to be acknowledged natural children of Felipe Pagán filed a motion for intervention in the said proceeding for declaration of heirship. They alleged that because they had been voluntarily recognized by their father they were entitled to the same share as that belonging to each

one of the legitimate children who received no extra portion in the inheritance. In the same motion for intervention they impeached the marriage certificate of Felipe Pagán and Juana Hernández which appeared in the parochial registry of the city of Ponce because it was not the original marriage record but a recent reconstruction of a certificate the existence of which was unknown, and they maintained that said reconstruction was void for all legal purposes.

The petitioner opposed the interveners' motion and denied that they were the natural children of the deceased since they had been born during the latter's marriage to Juana Hernández effected in 1878 for which reason they had the status of adulterine children. The petitioner maintained that the marriage certificate impeached by the interveners, which was reconstructed on June 18, 1948, was valid but that assuming that said certificate were null and void, Felipe Pagán and Juana Hernández always acted and behaved, from October 12, 1878 until the death of the former on June 2, 1949, like husband and wife during their lives, recording the births of the children begotten by them as their legitimate children. Lastly she requested that her petition for the declaration of heirship be granted and that the motion of the interveners, who according to the petitioner were not entitled to any portion of the inheritance of the deceased, be dismissed.

A hearing was held in which both parties introduced documentary and oral evidence by virtue of which the lower court found that the deceased died intestate on the date alleged in the petition, that he had married Juana Hernández and that the children had in said marriage were legitimate. The documentary evidence on which the marriage was established and proved—the petitioner desisted from proving said point with the marriage certificate reconstructed on June 18, 1948, since she admitted that it was ineffective for said purposes— consisted in the birth cer-

tificates of the children wherein the deceased stated that they were his legitimate children and of his wife Juana Hernández, as well as public deeds in which the deceased stated that he was married to Juana Hernández. There was oral evidence that both lived together and always acted in the community as married until the death of the deceased.

The lower court also found that the deceased had begotten the interveners outside his marriage to Juana Hernández and that he had recognized them by separate affidavits duly sworn to and subscribed in July and October, 1945. Consequently, it rendered judgment granting the motion for the declaration of heirship as well as the motion for intervention and it declared as the sole and universal heirs of the deceased his legitimate children had in his marriage to Juana Hernández and the latter as his surviving spouse in the usufructuary share, and the interveners as his recognized natural children with all the rights granted to them by law.

Feeling aggrieved, the interveners appealed from said judgment to this Court and assigned the following errors: (1) that the lower court found that the marriage of Felipe Pagán and Juana Hernández had been proved by virtue of the uninterrupted living together of the parents as husband and wife together with the record of the birth of their children as legitimate children and (2) that it weighed the evidence erroneously.

 Discussing their first assignment of error the appellants maintain that the lower court unduly applied § 86 of the Civil Code, 1930 ed.,[1] since its provisions are only applicable to the marriages contracted after January 1, 1885 and not to those effected before said date, which,

---

[1] Said Section provides:

"In the case referred to in the preceding section, the uninterrupted living together of the parents as husband and wife, together with the record of the birth of their children as legitimate children, shall be one of the means of proof of the marriage of the parents, unless it be shown that, either of them was bound by a previous marriage."

according to § 85 of said legal body [2] shall be proven "in the manner established by former laws", and that in any event the act of marriage should have been fully proved, before resorting, once the impossibility to produce the marriage certificate was established—as a result of a fire in the parish on September 25, 1880—to secondary evidence.

Since it was alleged in this case that the marriage was effected prior to January 1, 1885, appellants are correct indeed in alleging that according to the first paragraph of § 85 of the Civil Code said marriage should be proven not by the means established by said legal body for marriages effected after said date but by the means established *by former laws*, as stated in § 85. However, the correct construction given by appellants to § 85 does not help their case for although the provision in § 86 that "the uninterrupted living together of the parents as husband and wife, together with the record of the birth of their children as legitimate children, shall be one of the means of proof of the marriage of the parents, unless it be shown that, either of them was bound by a previous marriage," refers to marriages and to the case mentioned in the second paragraph of §85 of the Civil Code—marriages contracted after January 1, 1885 and in case it has disappeared from the book of marriages provided by the Civil Registry Act [3]—it is a fact that the legislation in force in Puerto Rico prior to January 1, 1885 [4] did not provide for secondary evidence to

---

[2] Said Section provides:

"Marriages solemnized before January the first, 1885, when the law of Civil Registry took effect in Porto Rico, shall be proven in the manner established by former laws.

"Those contracted afterwards shall be proven only by certification from the book of marriages. If this book shall have disappeared, any competent proof shall be admissible."

[3] Muñoz Morales, *Reseña Histórica y Anotaciones al Código Civil*, Book 1, pp. 241 *et seq.*

[4] Compilation of the Laws of Indias and Supplementary Laws as provided therein, of the Compilation, of the *Partidas* and Laws of Toro, the latter being subsequently limited to the *Novísima Recopilación* and the *Partidas*.

prove the marriage in case the parochial books should disappear.[5] Under these circumstances the provisions of § 36 of our Code of Civil Procedure are applicable [6] since it provides how courts shall exercise their jurisdiction when there is no special proceeding fixed by law when it says that, in such cases, "if the course of proceedings be not specially pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code". And it is significant that Subdivision 29 of § 464 of said Code—§ 102 of the Law of Evidence—establishes as a disputable pre-

The Civil Marriage Act of June 18, 1870 was extended to Puerto Rico by Royal Decree of November 12, 1886, that is, after the Civil Registry Act was in force here; but this Act, by Decree of February 9, 1865 was declared not applicable "to those who have contracted or will contract" canonical marriage which is the one alleged to have been contracted in the case at bar, "which shall be governed exclusively by the holy canons and civil laws which might be in effect until the enforcement of the said Act." The "Law of Civil Procedure" for the islands of Cuba and Puerto Rico went into effect here on January 1, 1886.

[5] Prior to January 1, 1885 in which the Civil Registry Act went into effect in Puerto Rico "the parochial registries kept by the Catholic Church pursuant to the provisions of the Holy Council of Trent (§ 23, year 1563) and expressly authorized by the R.D. of the Spanish Government of March 21, 1794 and subsequent ones." Muñoz Morales, *op. cit.*, p. 243.

"In the manner established by former laws" to which § 85 of the Civil Code refers "means the record in the books in custody of the rector of the Catholic Church who had authority to celebrate marriages." *Op.* and page cited.

In *García et al.* v. *Aguayo et al.*, 32 P.R.R. 392, 402, we held, without giving any reason, that it was an error of the trial court not to admit any secondary evidence of a marriage alleged to have been effected in the year 1883 in Havana which evidence tended to show that the alleged spouses were known to be living together and that they attended social functions together in Havana.

[6] *Hernández* v. *Registrar*, 67 P.R.R. 423.

Since the application of § 36 of the Code of Civil Procedure is so clear in this case we do not find it necessary to pass on the relevancy of § 7 of the Civil Code nor on the correction of the doctrine laid down in *López Zárate* v. *Villabaso*, 12 P.R.R. 52, followed in *Cividanes* v. *López Acosta*, 22 P.R.R. 74, in which *Ex parte Díaz*, 8 P.R.R. 151 is overruled *sub silentio* to the effect that the provisions of § 7 of the Civil Code are not applicable to matters of procedure, or adjective law, but only when the decision of a question in substantive law is involved.

sumption "That a man and woman deporting themselves as husband and wife have entered into a lawful contract of* marriage.

On the other hand, if the means of suppletory proof established by § 86 of the Civil Code to prove a marriage contracted after January 1, 1885 when the official proof of the marriage has disappeared, is an acceptable rule of law, it should also be accepted under § 36 of the Code of Civil Procedure to prove a marriage contracted prior to said date under the same circumstances since said means of proof is most conformable to the spirit of this Code. Thus, the first error assigned does not exist.

■ The second assignment is likewise untenable. The proof on the uninterrupted living together of the parents as husband and wife was contradictory but the trial judge was convinced that Felipe Pagán and Juana Hernández always lived together under the same roof and deported themselves at all times as married until the death of the former, begetting a large number of children who were recorded in the Civil Registry as legitimate. The evidence to that effect is sufficient to support the conclusion of the lower court which is strengthened even more by the fact that in all the sworn statements of acknowledgment of natural children on which appellants herein based their condition of heirs and their right to the inheritance of the deceased, the latter states that he is *married to Juana Hernández;* and in the affidavit of acknowledgment of Eustacio Pagán the deceased states that he is recognizing him "without prejudice to the interests of my legitimate children had in my marriage with Juana Hernández." From an examination of the evidence in the record we are convinced that the judge acted correctly in weighing the evidence.

The judgment will be affirmed.

---

*This word is erroneously printed "or" in the statute.